IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| ANN BRANCH, *et al.*, | * |
| Plaintiffs, | * |
| v. | * |
| | Civil Case No.: PWG-11-3712 |
| BANK OF AMERICA, N.A. | * |
| Defendant. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This Memorandum Opinion disposes of Defendant Bank of America, N.A.'s ("BANA") Motion for Summary Judgment, ECF No. 45, and supporting Memorandum, ECF No. 45-1; Plaintiffs Ann Branch ("Ann") and Paul Branch's ("Paul") Opposition, ECF No. 49; and Defendants' Reply, ECF No. 50.

Having reviewed the filings, I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the reasons stated herein, Defendants' Motion is GRANTED in part and DENIED in part.

I.   **FACTUAL BACKGROUND**

In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the non-movant, drawing all justifiable inferences in that party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (U.S. 2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Unless otherwise stated, this background is composed of undisputed facts. Where a dispute exists, I consider the facts in the light most favorable to Plaintiff. *See Ricci*, 557 U.S. at 585–86; *George & Co.*, 575 F.3d at 391–92; *Dean*, 336 F. Supp. 2d at 480.

Plaintiffs Ann and Paul Branch were married until December 3, 2010, when they were granted a Judgment of Absolute Divorce by the Circuit Court for Prince George's County. Paul Aff. ¶ 2, ECF No. 49-2; Ann Aff. ¶ 2, ECF No. 49-3; J. of Absolute Divorce ("Divorce J."), *Branch v. Branch*, No. CAD09-21574 (Md. Cir. Ct. Dec. 3, 2010), Pls.' Opp'n. Ex. 7, ECF No. 49-6. Prior to the divorce, in February 3, 2007, Ann Branch and Defendant entered into a "Bank of America Equity Maximizer Agreement and Disclosure Statement" (the "Line of Credit"), Pls.' Opp'n Ex. 1, ECF No. 49-4, with a limit of $200,000. Ann intended to use this line of credit to refinance an existing loan in the amount of $135,289.74, and did not inform Paul about the loan. Ann Aff. ¶ 3–4.[1] Around the date that the Line of Credit was executed, Ann received a check from Defendant in the amount of $135,289.74. *Id.* ¶ 6.

The loan was to be secured by a Deed of Trust on Plaintiffs' marital home, located at 9911 Pittman Avenue, Upper Marlboro, Maryland (the "Marital Home"). Plaintiffs assert that Paul never was aware of or executed the Deed of Trust or signed any related documents before a notary. Paul Aff. ¶ 7–8. It is undisputed, however, that Paul's notarized signature appears on at least one version of the Deed of Trust. *See* Deed of Trust, Pls.' Opp'n Ex. 3, ECF No. 49-5. Accordingly, Plaintiffs claim that Paul's signature had been forged on the Deed of Trust and therefore he should not be bound by its terms. *See* Compl., ECF No. 2. According to Paul, he did not become aware that his signature appeared on the Deed of Trust until January 11, 2011, when he attempted to refinance a mortgage on the Marital Home. Paul Aff. ¶ 9.

Plaintiffs filed their Complaint in the Circuit Court for Prince George's County on October 11, 2011, Civil Non-Domestic Case Information Rept., ECF No. 2-1, asserting four

---

[1] Although it is alleged that Ann refinanced the mortgage in her own name "to fulfill the terms of the separation agreement between the plaintiff Ann Branch and plaintiff Paul Branch," Compl. ¶ 8, ECF No. 2, it is far from clear how this action was consistent with the parties' agreement that Paul would assume the Marital Home in the divorce. *See* Divorce J. 2.

counts: Count I: "Declaration and Injunction to determine the rights pursuant to the [Line of Credit]"; Count II: Breach of Contract; Count III: Reformation; and Count IV: Fraud. Compl. Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 by Notice of Removal filed on December 22, 2011. ECF No. 1. Defendant initially moved for summary judgment on January 14, 2013, *see* Def.'s Mot. for Summ. J., but that motion was denied without prejudice after I resolved a discovery dispute between the parties by sanctioning Plaintiffs and ordering that additional discovery be produced to Defendant. *See* Mem. Op., ECF No. 40. Defendant filed the instant motion for summary judgment on May 7, 2013. Defs.' Mot. The motion now has been briefed fully and it is ripe for consideration.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* "[U]nder Fed. R. Civ. P. 56, as amended in 2010, facts in support of or opposition to a

3

motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form." *Mallik v. Sebelius*, ---- F. Supp. 2d ----, 2013 WL 4559516, at *12 (D. Md. Aug. 28, 2013) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. DKC-11-3415, 2013 WL 2919705, at *1 n.1 (D. Md. June 12, 2013)).

A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). The substantive law governing the case determines what is material. *See Hoovan-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant in light of the governing law, is not material. *Id.*; *see* Fed. R. Evid. 401 (defining relevance).

## III. DISCUSSION

### A. Statute of Limitations

Defendant's primary argument appears to be that all of Plaintiffs' claims are barred by the statute of limitations. "Under Maryland law, the statute of limitations for contract and fraud claims is three years unless otherwise specified." *United States v. Allen-Williams*, No. JFM-11-1001, 2011 WL 4985817, at *4 (D. Md. Oct. 19, 2011) (citing Md. Code, Cts. & Jud. Proc. § 5-101). However, "Maryland also recognizes the 'discovery rule' in all civil actions. Under the discovery rule, 'the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong.'" *Virtual Physical Ctr. Rockville, LLC v. Phillips Med. Sys. N. Am., Inc.*, 478 F. Supp. 2d 840, 846 (D. Md. 2007) (quoting *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981)).

The parties agree that Plaintiffs' cause of action accrued in late 2007, when the allegedly forged Deed of Trust was recorded. *See* Defs.' Mem. 9; Pl's Opp'n ¶ 32. Plaintiffs' Complaint was not filed until October 10, 2011, four years after the Deed of Trust was filed. *See* Notice of Removal ¶ 1. Ann has not claimed that she was unaware that Paul's name appeared on the Deed of Trust. *See* Ann Aff.[2] To the contrary, in alleging that "Ann Branch demanded plaintiff Paul Branch be removed from the Deed of Trust," Compl. 29, Plaintiffs acknowledge that she knew Paul's name appeared on the Deed of Trust. Therefore, Ann's claims are time-barred, and summary judgment against her is appropriate on all claims.

Although Plaintiffs' Complaint is unclear as to the factual and legal bases underlying Plaintiffs' causes of action, it appears that Counts II and III, for breach of contract and reformation, respectively, necessarily are asserted by Ann alone. Both of these causes of action require (or at least presuppose) the existence of a contract between the parties. *See Carroll Co. v. Sherwin–Williams Co.*, 848 F. Supp. 2d 557, 563 (D. Md. 2012) ("To prevail in an action for breach of contract, a plaintiff must prove that *the defendant owed a contractual obligation* and that the defendant breached that obligation." (emphasis added)); *see also Hearn v. Hearn*, 936 A.2d 400, 410 (Md. Ct. Spec. App. 2007) (explaining that reformation conforms a document to the "actual mutual intent of the parties"). Because Plaintiffs' entire case rests upon their position

---

[2] In places, Plaintiffs are vague as to when and whether Ann knew that Paul's name had been signed to the Deed of Trust, *see, e.g.*, Pls.' Opp'n ¶ 35 ("The plaintiff discovered the refinancing after the granting of the absolute divorce."), and with respect to which causes of action are asserted by which plaintiff, *see* Compl. Were Plaintiffs unrepresented, this vagueness might be entitled to a liberal construction and additional facts might have been necessary. *Cf. Boag v. MacDougall*, 454 U.S. 364, 365 (1982). However, even self-represented parties are expected to state their claims "in an intelligible, coherent, and manageable form," *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965), and where, as here, Plaintiffs are represented by counsel, there is no injustice in expecting counsel clearly to set forth any facts relevant to Plaintiffs' legal assertions. Accordingly, the lack of precision and the vagueness in Plaintiffs' filings does not entitle them to additional favorable inferences.

that Paul never was a party to any contract with Defendant, I cannot see any way that these claims can be asserted by Paul, even in the alternative. Accordingly, Defendant is entitled to summary judgment on Counts II and III on statute of limitations grounds.

Unlike Ann, Paul Branch, relies on the "discovery rule," claiming that he did not discover that his name had been signed to the Deed of Trust until January 11, 2011. *See* Paul Aff. ¶ 9.[3] In response, Defendant relies on *Storey v. Columbia Home Loans, LLC*, No. RDB-11-3214, 2012 WL 1957978 (D. Md. May 23, 2012), for the proposition that "the recording of a deed would" put plaintiffs on notice of fraud. Def.'s Mem. 9 (citing *Storey*, 2012 WL 1957978, at *7). Yet *Storey* bore key differences from the instant case: In *Storey*, the plaintiffs' claims arose out of a series of irregularities respecting their mortgage, in the midst of which the plaintiffs were informed that their deed of trust had been lost and were asked to sign a new, back-dated deed of trust. *Storey*, 2012 WL 1957978, at *3. After the plaintiffs refused to do so, they became aware that a deed of trust purporting to contain their signatures had been filed. *Id.* Under those circumstances, the plaintiffs argued that they were not put on notice of fraud until that deed of trust was filed, and Judge Bennett agreed that the recording of the deed of trust was the *earliest* point at which the plaintiffs could be said to be on notice, supporting a finding that the plaintiffs' claims were filed timely. *Id.* at *7. At the very least, *Storey* emphatically does not stand for the proposition that the recording of a forged deed of trust necessarily is notice to all the world that a claim has accrued for statute of limitations purposes. It is better read more narrowly as saying

---

[3] Defendant notes that Plaintiffs' Opposition claims that Defendant's alleged fraud was discovered earlier, on November 10, 2010. Even assuming, without deciding, that such a statement could be considered adopted by Paul, *see* Fed. R. Evid. 801(d)(1)(A) & (d)(2)(B), either date is within three years of the date on which this action was filed, and therefore Paul's claim is timely in any event.

that, even in the context of mortgage irregularities, a party is not necessarily on notice of fraud until a fraudulent deed actually has been recorded.

Here, Paul Branch was not a party to the underlying transaction, and he has averred that he did not even know that Ann was refinancing the mortgage until 2011. Paul Aff. ¶¶ 3–4, 9. The mere fact that he refused to sign the Deed of Trust, *see* Compl. ¶ 11–13; Defs.' Mem. 10, without more, did not put him on notice that someone else may have signed it in his name. Further, Plaintiffs have alleged that "Paul Branch had entered agreement with Ann Branch not to be obligated under the Promissory Note," Compl. ¶ 27, which suggests that Paul had been assured that his name would not appear on the Deed of Trust and had no reason to expect otherwise.[4] Thus I find that he has alleged that he did not discover that a fraud may have occurred until 2010, and his claims therefore are not time-barred.

## B. Factual Dispute Regarding Forgery

Defendant also seeks to dispose of all of Plaintiffs' claims by showing a lack of a genuine dispute over whether Paul's signature on the Deed of Trust is genuine. Defendant argues that it has put forward expert testimony that conclusively establishes the genuineness of Paul's signature, and that this testimony is unopposed because Plaintiffs have not named a rebuttal expert. *See* Def.'s Mem. 6–7 (citing Heilman Expert Report, Def. BANA's Mot. for Sanctions

---

[4] Of course, Plaintiffs' allegations also imply that Ann may have breached this supposed contract with Paul and may stand as a guarantor of any resultant damages. Although this is a far cry from giving any credence to Defendant's insinuations that it was Ann, not BANA, who may have forged Paul's signature, *see* Def.'s Reply 5 n.1, it nevertheless suggests that Ann may bear liability for Paul's inclusion on the Deed of Trust. To the extent that such claim may create a conflict between Ann and Paul, the record does not reflect whether Plaintiff's counsel has made a reasonable examination of whether any such conflict is consentable, has informed his clients of any such conflict, properly has obtained written consent thereto, and otherwise has complied with the provisions of Maryland Lawyers' Rule of Professional Conduct 1.7.

or, in the Alternative, to Compel Discovery Resps. and Extend Def.'s Deadline to File Dispositive Mots. Ex. D, ECF No. 25-5). Defendant is incorrect on both points.

First, the mere fact that Plaintiffs have not identified a rebuttal expert does not prevent them from rebutting Defendant's handwriting expert. The Federal Rules of Evidence expressly acknowledge that handwriting comparisons are within the competence of lay witnesses, Fed. R. Evid. 901(b)(2), or the finder of fact, Fed. R. Evid. 901(b)(3). And the Fourth Circuit expressly has noted that an opinion as to the genuineness of handwriting can be "rationally based on the . . . perception" of a lay witness. *United States v. Atkins*, 139 F.3d 839 (4th Cir. 1998) (citing Fed. R. Evid. 701); *see also United States v. Tipton*, 964 F.2d 650, 655 (7th Cir. 1992) (noting that several circuits expressly have allowed lay testimony regarding handwriting). Defendant's claim that "Plaintiffs are barred from putting forth [rebuttal] evidence," Def.'s Mem. 7, simply is not true.

Moreover, Plaintiffs have put forth sufficient evidence to create a dispute of fact as to the genuineness of Paul's signature. Even crediting Defendant's expert, his opinion is heavily qualified. Although he found that one handwriting specimen "was very likely prepared by PAUL R. BRANCH," his opinion with respect to the Deed of Trust was less confident, stating that "some handwriting similarities were observed in the questioned 'Paul R. Branch' signature on the specimen [] which indicate BRANCH likely prepared this signature." Heilman Expert Report 3. Defendant's expert further qualifies his findings by noting that "[a] more definite opinion may be reached with additional signatures." *Id.* In contrast to these tepid conclusions, Paul Branch has affirmed from personal knowledge that he "did not sign the Deed of Trust and deem[s] the signature on the Deed of Trust to be a forgery." Paul Aff. ¶ 8. This is more than sufficient to create a disputed issue of fact, and therefore precludes summary judgment.

### C. Ratification

Defendant argues that even if Paul Branch's signature was forged, he ratified that signature by his subsequent acts. "Ratification requires an intention to ratify and knowledge of all material facts. Intention to ratify may be inferred by words, conduct or silence on the part of the principal that reasonably indicates its desire to affirm the unauthorized act." *Progressive Cas. Ins. Co. v. Ehrhardt*, 518 A.2d 151, 156 (Md. Ct. Spec. App. 1986) (internal citations omitted). According to Defendant, Paul ratified his signature by allowing the original mortgage to be paid off and remaining in the Marital Home. Def.'s Mem. 11. Defendant also asserts that he is charged with knowledge of the material facts because he should have known that Ann could not refinance the mortgage without his signature on the Deed of Trust, *id.*, and that Paul benefited from the transaction and did nothing to repudiate those benefits, *see* Def.'s Reply 7; *see also Ehrhardt*, 518 A.2d at 156 ("Circumstances that suggest an intent to ratify include: receipt and retention of the benefits of the unauthorized transaction and a failure to make a timely disaffirmance of the unauthorized acts." (internal citations omitted)).

It is not clear that Paul had knowledge of the alleged forgery, insofar as he purports to have been unaware that the mortgage was being refinanced. *See* Branch Aff. ¶ 3. Nor is it clear that he knew that loan funds were being disbursed in his and Ann's name. And notwithstanding the opacity of Plaintiffs' Complaint, it is at least as likely that Ann's loan frustrated Paul's goals in effectuating the Divorce Judgment as it is that he knowingly realized any benefit from the transaction. *Compare* Compl. ¶ 7 (stating that Ann sought to refinance "in order to provide Ann Branch sole financial obligation of the marital home"), *with* Divorce J. 2 ("Paul Branch assumes the marital property . . . .").

Most importantly, "the existence of ratification is essentially a question of fact." *Smith v. Merritt Sav. & Loan, Inc.*, 295 A.2d 474, 481. As such, it is not appropriate to grant summary judgment on that basis.

**D. Damages**

Defendant argues Plaintiffs have not shown any damages on their breach of contract or fraud claims. Because Ann Branch's breach of contract claim is time-barred, I need not consider whether she has shown damages arising from that claim. The only question is whether Plaintiffs have demonstrated that they may be able to recover damages on Paul's fraud claim.

To prevail on a claim for fraud, Plaintiffs must show, by clear and convincing evidence:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Gourdine v. Crews*, 955 A.2d 769, 791 (Md. 2008) (quoting *Md. Envtl. Trust v. Gaynor*, 803 A.2d 512, 516 (Md. 2002)).

In arguing that Plaintiffs did not sustain any compensable injury, Defendant attempts to elide Ann and Paul together, arguing that "Plaintiffs admit that they used the money they obtained from BANA to refinance and pay off their prior mortgage." Def.'s Mem. 13. In fact, Paul alleges that Ann did so without his knowledge or consent, and that he never agreed to be bound by her action. *See* Paul Aff. ¶¶ 3–8. And although it is not clear that Paul has suffered the $200,000 in damages that he alleges—particularly if the outstanding balance on the loan secured by the Deed of Trust actually is only $135,289.74, Pls.' Opp'n ¶ 57—Plaintiffs have provided evidence that Paul attempted to refinance the earlier mortgage and was unable to do so because of the Deed of Trust. *See* Paul Aff. ¶ 9; *see also* Pls.' Opp'n ¶ 57. Although Paul will bear the

burden of showing his damages at trial, the fact that the Deed of Trust has prevented him from securing a new mortgage and finalizing his divorce is sufficient evidence of damages to prevent a grant of summary judgment against him. *See Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d 631, 668 (Md. Ct. Spec. App. 2012) (finding actual damages "where the evidence establishes that the plaintiff lost assets as a result of the false representation").

However, Paul Branch's fraud claim has a more fundamental problem: it is not apparent that Defendant made any representations to Paul whatsoever, much less misleading representations on which he reasonably relied. *See Gourdine*, 955 A.2d at 791. Nor does this seem consistent with Paul's claim that he had no knowledge that Defendant was working with Ann to refinance the original mortgage. *See* Paul Aff. ¶ 3–9. If the facts are as Plaintiffs have alleged, it may be appropriate to issue summary judgment in favor of Defendant on Count IV. Pursuant to Fed. R. Civ. P. 56(f), Plaintiffs have fourteen days to identify a genuine issue of fact as to whether Defendant made any false representations to Paul Branch or otherwise to show cause why summary judgment should not be granted on Count IV.

### E. Remaining Claims

Defendant also seeks summary judgment on a purported count of violation of the Maryland Consumer Protection Act ("MCPA"), which apparently was listed as a basis for damages in Ann's interrogatory responses. *See* Resps. to First Set of Interrogs. to Pls. No. 14, Def.'s Reply in Supp. of its Mot. for Summ. J. Ex. D, ECF No. 35-4. As Defendant correctly notes, no claim for the MCPA has been set forth in a pleading, Def.'s Mem. 14, and therefore no such claim is before me.

The only claim that definitely remains is Paul Branch's claim for declaratory relief. To the extent that Paul's claim of forgery is, in essence, a defense to a putative contract suit at

common law, it appears that the declaratory judgment claim is legal. *See Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643 (7th Cir. 2002) ("'If the declaratory judgment action does not fit into one of the existing equitable patterns but is essentially an inverted law suit—an action brought by one who would have been a defendant at common law—then the parties have a right to a jury." (quoting *Owens–Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1189 (3d Cir. 1979))). But in Maryland, a jury demand must be asserted "either as a separate paper or separately titled at the conclusion of a pleading and immediately preceding any required certificate of service." Md. Rule 2-325(a). Merely checking a box on the circuit court's Case Information Sheet, ECF No. 2-1, is not effective to invoke the right to a jury trial. *Duckett v. Riley*, 52 A.3d 84, 85 (Md. 2012). Accordingly, Plaintiff Paul Branch's remaining claim will be tried without a jury. *See* Fed. R. Civ. P. 81(c)(3) (a pre-removal jury demand in a removed case is effective when "in accordance with state law").

Following any briefing on whether Paul Branch believes that he can maintain Count IV, the next step is to set this case in for a bench trial. A scheduling call will be held on Tuesday, January 21, 2014 at 3:00 p.m., at which time the parties should be prepared to discuss a trial schedule and other related deadlines. Counsel for Plaintiffs is to initiate the call.

## IV. CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment is GRANTED with respect to Counts II and III, and with respect to all counts asserted by Ann Branch, and otherwise is DENIED.

Within fourteen days, Plaintiff Paul Branch SHALL SHOW CAUSE as to why Summary Judgment should not be granted in favor of Defendant with respect to Count IV; and

A telephone status conference will be SCHEDULED for Tuesday, January 21, 2014, at 3:00 p.m. to address a trial schedule and any other related issues; counsel for Plaintiffs is to initiate the call.

A separate order shall issue.

Dated: December 19, 2013                        /S/
                                                        Paul W. Grimm
                                                        United States District Judge

dsy